SILBERMAN, Judge,
Concurring in
part and dissenting in part.
The majority correctly states that the issues before us involve the scope of the power of the Clerk to perform certain functions. In my view, the trial court correctly resolved the questions before it. Thus, I concur in the majority’s decision to affirm on one of the issues, but I dissent from the decision to reverse on the remaining issues.

Background

Procedurally, the Clerk brought a declaratory judgment action against the Board of County Commissioners of Collier County (the county), as ex-officio the Governing Board of the Ochopee Area Fire Control and Emergency Medical Care Special Taxing District (the fee district), and county employees, Paul Wilson and Linda T. Swisher. Wilson is the fire chief of the fire district and he supervises Swisher, an administrative secretary.[2] The trial court entered final summary judgment in favor of the county and its employees. In cases that were consolidated with the declaratory judgment action, the county and Wilson each instituted quo warranto proceedings against the Clerk, and the trial court entered final summary judgment in favor of the county and Wilson in those actions as well. All three cases deal with the scope of the Clerk’s authority in financial matters of the county-
This dispute arose when the Clerk discovered that county employees controlled a fire district checking account in the name of “Ochopee FCD Volunteers.” The Clerk did not have custody over the funds deposited in the account, and the account was not subject to the normal financial controls of the county. The county contended that only funds raised by volunteers were deposited in the account and that the funds were used to purchase equipment for the fire department. The Clerk sought a determination that it was appropriate for him to inquire into such an account and have the employees account for and return the funds to him.[3] The Clerk also sought a determination of the general rights and duties of the Clerk. In the quo warranto action, the county sought to prohibit the Clerk from exercising powers to which he is not entitled relating to fiscal affairs of the county.
The trial court determined that there were no disputed issues of material fact and that the determination of the rights, powers, and duties of the Clerk involved issues of law. An appellate court’s review of a trial court’s ruling on a motion for summary judgment concerning issues of law is by the de novo standard of review. Pinellas County v. City of Largo, 964 So.2d 847, 851 (Fla. 2d DCA 2007).
The Clerk and the county agreed, and the trial court found as a matter of law, that “the Clerk is the auditor, recorder and custodian of all County funds, that the Clerk is the accountant for the Board of County Commissioners, and that the Clerk has the duty to determine the legality of all County expenditures before issuing a warrant for payment.” The Clerk challenges the trial court’s rulings that the Clerk’s powers do not include (1) preparing and certifying the accuracy of the county’s financial statements; (2) controlling funds not in his custody and conducting investigations of outside bank accounts that he suspects may contain county funds; *849 and (3) conducting internal audits beyond the Clerk’s pre-audit function required before a warrant for payment is signed.
The Clerk argues that the powers at issue are necessarily implied from a constitutional or statutory source. In Coca-Cola Co., Food Division, Polk County v. State, Department of Citrus, 406 So.2d 1079, 1081-82 (Fla.1981), the Florida Supreme Court addressed implied powers and explained that they include powers that are necessary to accomplish a stated governmental purpose and those that are necessary to carry out a power and make it effectual and complete.
The county contends that the trial court ruled properly as a matter of law because the Clerk, as a constitutional officer, has no power that is not conferred upon him by the Florida Constitution or general law. See Escambia County v. Bell, 717 So.2d 85, 87 (Fla. 1st DCA 1998) (citing White v. Crandon, 116 Fla. 162, 156 So. 303, 305 (1934)). The Clerk “only has such authority as is clearly conferred by statute or is necessarily implied from express statutory powers or duties.” Id. (citing White, 156 So. at 305). In Escambia County, the court recognized that “‘while an express power duly conferred may include implied authority to use means necessary to make the express power effective, such implied authority may not warrant the exercise of a substantive power not conferred.’ ” Id. at 88 (quoting Op. Att’y Gen. Fla. 82-95 (1982)). “ ‘[W]here there is doubt as to the existence of authority, it should not be assumed.’ ” Id. (quoting White, 156 So. at 305). With these principles in mind, I would resolve each of the issues as follows.

Preparation of Annual Financial Statements

As to this issue, I agree with the majority’s decision to affirm. The Clerk is an elected county officer, and unless otherwise provided by county charter or special law, “the clerk of the circuit court shall be ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds.” Art. VIII, § 1(d), Fla. Const. The powers and duties of the Clerk, as a county officer, “shall be fixed by law.” Art. II, § 5(c), Fla. Const. Section 28.12, Florida Statutes (2007), provides, “The clerk of the circuit court shall be clerk and accountant of the board of county commissioners. He or she shall keep the minutes and accounts and perform such other duties as provided by law.” Section 125.17, Florida Statutes (2007), provides, “The clerk of the circuit court for the county shall be clerk and accountant of the board of county commissioners. He or she shall keep their minutes and accounts, and perform such other duties as their clerk as the board may direct.” Thus, other than keeping the minutes and accounts, the Clerk shall perform other duties only as provided by law or as the board directs.
The Clerk must keep “books of account and of record in accordance with s. 218.33.” § 116.07, Fla. Stat. (2007). Section 218.33(2), Florida Statutes (2007), provides that a “local governmental entity shall follow uniform accounting practices and procedures as promulgated by rule of the department to assure the use of proper accounting and fiscal management by such units. Such rules shall include a uniform classification of accounts.” Section 136.05, Florida Statutes (2007), provides that “[t]he board of county commissioners shall keep an accurate and complete set of books showing the amount on hand, amount received, amount expended and the balances thereof at the end of each month for each and every fund carried by” the board.
General law does not specifically give the Clerk the duty to prepare the annual financial statements. Instead, it is the *850 board’s duty to prepare and submit the annual financial statements. Section 218.32(l)(a) provides as follows:
218.32 Annual financial reports; local governmental entities.—
(l)(a) Each local governmental entity that is determined to be a reporting entity, as defined by generally accepted accounting principles, and each independent special district as defined in s. 189.403, shall submit to the department a copy of its annual financial report for the previous fiscal year in a format prescribed by the department. The annual financial report must include a list of each local governmental entity included in the report and each local governmental entity that failed to provide financial information as required by paragraph (b). The chair of the governing body and the chief financial officer of each local governmental entity shall sign the annual financial report submitted pursuant to this subsection attesting to the accuracy of the information included in the report. The county annual financial report must be a single document that covers each county agency.
In accord with section 218.39(1), unless the county is notified that the Auditor General will perform a financial audit in that fiscal year, the county must have an annual financial audit performed by an independent certified public accountant. Section 218.32(l)(d) requires that the county submit the audit report and financial report to the Department of Financial Services. The county argues that nowhere in the Florida Statutes is there a requirement that the Clerk prepare the financial report or that he serve as the county’s chief financial officer.
Therefore, any duty for the Clerk to prepare the financial statement is “as the board may direct.” § 125.17. Thus, the trial court properly determined that the Clerk’s authority to prepare financial statements is derived from a delegation of authority by the board and that the scope of that delegation is within the board’s discretion to grant, remove, or modify.

Power to Investigate Outside Accounts and to Collect and Deposit Funds

I disagree with the majority’s analysis of this issue and would affirm. In my view the county, and not the Clerk, has the power and the duty to investigate into accounts that are not maintained by the Clerk and to pursue remedies for wrongdoing.
The Clerk, as ex officio clerk of the board of county commissioners, is “custodian of all county funds.” Art. V, § 16, Art. VIII, § 1(d), Fla. Const. His powers and duties in this regard must be “fixed by law.” Art. II, § 5(c), Fla. Const. General law provides for county officers who are authorized to collect funds due to the county to pay those sums into the county treasury “not later than 7 working days from the close of the week in which the officer received the funds.” §§ 116.01(1), 219.07. All persons who receive county funds must turn them over to the Clerk by depositing the funds in a qualified county depository. See § 136.03. The Clerk’s duty is to keep accounts of the funds in county depositories. Section 136.08 provides that “[t]he accounts of each and every board and the county accounts of each and every depository, mentioned or provided for in this chapter, shall at all times be subject to the inspection and examination by the county auditor and by the Auditor General.” Thus, the Clerk, as county auditor, has the power to inspect and examine' the accounts in county depositories. This allows the Clerk to keep accounts of county funds.
As the county argues, the duty to collect and deposit county funds does not shift to the Clerk if the county officers fail to perform these duties. Section 219.08 pro *851 vides that “[e]ach of the duties required to be performed or done under the provisions of this act which is not done or performed at or within the time or times herein prescribed shall continue to be the duty of the person charged therewith until it is actually and completely performed.” The Clerk has not pointed to any statutory provision that gives him the authority to collect funds or compel their collection, and in my view, it is not necessary to find that the Clerk has an implied power to undertake such actions when that responsibility is already specified by law as the responsibility of county officers. Therefore, I agree with the trial court’s ruling
that to the extent that the Clerk is the custodian of all County funds, he necessarily can only be the custodian of those funds to which he has been given custody, which would presumably encompass all County funds. Even if the Clerk becomes aware or suspects that there are County funds of which he has not be [sic] given custody, this Court is unaware of any constitutional or statutory authority that would allow the Clerk to initiate an independent investigation or attempt to recover those funds, absent instruction from the Board of County Commissioners.
The trial court further determined that “[t]his does not preclude the Clerk from seeking authority to pursue these funds or making these funds known to any appropriate authority, but as stated above absent any constitutional or statutory grant of power the Court cannot acquiesce to the Clerk making unilateral investigations into these funds.”
With respect to investigations, section 125.01 (l)(s), Florida Statutes (2007), gives the board of county commissioners, as governing body of the county, the power to “[m]ake investigations of county affairs; inquire into accounts, records, and transactions of any county department, office, or officer; and, for these purposes, require reports from any county officer or employee and the production of official records.” Further, section 125.01(l)(b) gives the board the power to “[p]rovide for the prosecution and defense of legal causes” on behalf of the county. Section 125.74(l)(g) gives the county administrator the power to “[supervise the care and custody of all county property.” The trial court correctly concluded, “This Court is unable to find any constitutional or statutory authority that would give the Clerk the power to investigate the nature of funds not currently in its custody or to supervise the care and custody of funds not currently in its custody or to file a lawsuit regarding those funds.”

Conducting Postpayment Audits

I also disagree with the majority’s conclusion as to this issue and would affirm. The Clerk contends that the trial court erred in concluding that the Clerk’s duty to determine the legality of payments ends once the warrant for payment is signed. The Clerk argues that no statute or case law places time limits on the actual exercise of his role to determine legality of payments. He further argues that, as a matter of modern accounting, this time restriction on his auditing role makes his job impossible. The trial court ruled as follows:
[T]he Court finds as a matter of law, that prior to signing any warrant for the payment of any claim, bill or indebtedness from County funds, the Clerk is required to insure that the payment is lawful. Consequently, any auditing necessary to insure the legality of the expenditure prior to the payment is proper. However, the Court is unable to find that the Clerk has been granted any specific constitutional or statutory authority to perform further audits beyond *852 the time that the warrant is signed, unless so directed by the Board of County Commissioners.
The county contends that the supreme court’s decision in Alachua County v. Powers, 351 So.2d 32 (Fla.1977), supports the trial court’s ruling. In Alachua County, the supreme court addressed the clerk’s role as auditor.[4] The Clerk contends, however, that because Alachua County determined that the clerk could not perform “post-audits” and that term has been replaced in the statutes by “financial audit” that Alachua County has no application to the internal audits the Clerk performs to assure good payment controls.
The Clerk’s constitutional and statutory l'ole as county auditor “shall be fixed by law.” Art. II, § 5(c), Fla. Const. The supreme court recognized that the clerk’s pre-audit function stems from the responsibility to refuse to sign illegal warrants and the corresponding civil and criminal liability imposed for violating this requirement. See 351 So.2d at 36; § 129.09. The court stated that “there must be some type of pre-audit review of the disbursement in order to be sure that the funds will not be used for an unlawful purpose.” 351 So.2d at 36. The court described the clerk’s role as pre-auditor of county funds but also recognized that “the board has the right to audit its own funds and make such investigations as may be necessary before the use of any public funds.” Id. at 37; see also § 125.01(l)(s) (providing for the board’s power to investigate county affairs and inquire into county “accounts, records, and transactions”); § 125.01(l)(x) (providing for the board’s power to employ an independent accounting firm to conduct audits). The court declared that
[t]he constitutional and statutory language discussed above require that the auditing function in making such an investigation be carried out by one of three entities: pre-auditing by the clerk in his capacity as county auditor, performance audit by an independent certified public accountant (or independent accounting firm), and post-audit by the auditor general or the independent auditing firm.
351 So.2d at 37. The supreme court further explained as follows:
The clerk has the authority and responsibility to perform the auditing functions both as an arm of the board in auditing the records of constitutional officers and as a watchdog of the board in the case of pre-auditing accounts of the board in determining legality of expenditure. The phrase “legality of expenditure” includes that the funds are spent for a public purpose, that the funds are spent in conformity with county purchasing procedures or statutory bidding procedures, that the expenditure does not overspend any account or fund of the budget as finally adopted and recorded in the office of the clerk. If the board becomes concerned, it has the authority to require a performance audit or post-audit by an independent accounting firm.

Id.

The term “postaudit” was defined in section 11.45(l)(c), Florida Statutes (1975), and is no longer in the statutes. Chapter 11 now contains the term “financial audit.” See § 11.45(l)(c), Fla. Stat. (2007). The Clerk does not claim to have authority to *853 do a financial audit, because a financial audit is an external audit. Rather, he contends that Alachua County does not prohibit him from performing internal audits after transactions occur as part of determining the legality of payment. However, as the county points out, the Clerk cannot exercise any authority unless that authority is conferred upon him by law. In Alachua County, the court recognized that the clerk has the authority to inspect and examine county accounts.[5] See 351 So.2d at 36; see also § 136.08 (“The accounts of each and every board and the county accounts of each and every depository, mentioned or provided for in this chapter, shall at all times be subject to the inspection and examination by the county auditor and by the Auditor General.”).
The Clerk cites to W & F Ltd. v. Dun-kle, 444 So.2d 554 (Fla. 4th DCA 1984), to support his view that he has the power to do more than pre-audit before a warrant is signed. In W & F Ltd., a board of county commissioners created a nonprofit corporation that controlled disbursements for a public construction project, and the trial court determined that the corporation was the alter ego of the county. Id. at 557. The Fourth District stated that the issue on appeal was “whether there is substantial competent evidence in the record, supported by applicable law, to justify affir-mance of the trial court’s determination that the appellee clerk has the authority to pre-audit the contemplated expenses of this project and to audit those which have been expended.” Id. at 557 (emphasis added). It appears that the clerk in W & F Ltd. never had the opportunity to perform his pre-auditing function as to funds that had already been expended. See id. at 556. This may explain the Fourth District’s determination that the clerk could audit expenses of the project that had already been paid.
In affirming the trial court’s judgment, the Fourth District quoted Alachua County, reiterating the role of the clerk, as county auditor, to perform pre-audit review of disbursements to ensure they are not made for an unlawful purpose. Id. at 557-58 (quoting Alachua County, 351 So.2d at 36). The W & F Ltd. court recognized that the legislature had “wisely not done anything since [the Alachua County ] decision to devitalize the caretak-ing of public funds.” Id. at 558. As noted, Alachua County recognized the clerk’s authority to inspect and examine accounts under section 136.08. See 351 So.2d at 36.
I would affirm the trial court’s ruling that any auditing by the Clerk “necessary to insure legality of the expenditure prior to the payment is proper” and, under the circumstances here, that the Clerk does not have the power to conduct a postpayment audit absent authorization by the county. I make one observation as to the following statement that the trial court made: “However, the court is unable to find that the Clerk has been granted any specific constitutional or statutory authority to perform further audits beyond the time that the warrant is signed, unless so directed by the Board of County Commissioners.” Concerning that statement, while the Clerk’s audit powers are limited by law, the Clerk remains entitled to inspect and examine county accounts. See § 136.08; see also § 125.17 (providing that, as accountant for the board, the clerk shall keep the board’s accounts). The statutory provisions contain no time limits; in fact, section 136.08 states “at all times” *854 regarding the Clerk’s authority to inspect and examine county accounts.
For these reasons, I would affirm the final judgment.

. Wilson and Swisher have not made an appearance in this appeal.

. The county later had its employees turn over the remaining funds in the account to the Clerk and account for how funds had been spent.

. Note, however, that section 218.31(15) defines "auditor” as "an independent certified public accountant licensed pursuant to chapter 473 and retained by a local governmental entity to perform a financial audit.” Thus, the Clerk’s role as "auditor” must have a different meaning because the Clerk is clearly not an external auditor as defined by section 218.31.

. It seems sell-evident that the inspection and examination of accounts is less extensive than what is contemplated by an audit, a financial audit, an operational audit, or a performance audit, as those terms are defined in section 11.45(1 )(a), (c), (g), (h).